WILMERDING, HOGUET & CO. v. JOHN F. MITCHELL.

Whenever a transaction resolves itself into a security for a debt, it is a mortgage. The right of redemption must exist, to constitute a mortgage, so that the debtor shall be entitled to a release of his property, on the payment of the debt.

Replevin.   On rule to show cause.

Argued at June Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and KNAPP.

For the plaintiffs, *Mercer Beasley, Jr.*

For the defendant, *R. Wayne Parker.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The plaintiffs, Wilmerding, Hoguet & Co., in November, 1878, replevied out of the hands of John F. Mitchell, the bailiff of Elias N. Miller, the goods in question. The said goods had been taken by said Mitchell, as bailiff of said Miller, from the New Brunswick Carpet Mills, as a distress for the rent of said carpet mills, said Miller being the landlord. James F. Wade & Co. were the tenants of the carpet mills. The distress was made in the early part of November, 1878. The goods having been removed from the said mills, they were replevied by the said plaintiffs, Wilmerding, Hoguet & Co., who claim to have purchased the same of James F Wade & Co., on September 20th, 1878, by the following bill of sale

This agreement, made and entered into the twentieth day of September, one thousand eight hundred and seventy-eight, by and between James Wade and Abraham Wrigley, composing the firm of James Wade & Co., of New Brunswick,

Wilmerding, Hoguet & Co. v. Mitchell.

State of New Jersey, parties of the first part, and Wilmerding, Hoguet & Co., auctioneers and commission merchants, of the city of New York, parties of the second part, witnesseth as follows:

That the parties of the first part are now engaged as manufacturers of carpets, at their works at New Brunswick, New Jersey, known as the Etna Carpet Works, and have now on hand, in stock and process of manufacture, a large quantity of raw and other material, which requires the expenditure of divers sums of money and additional stock, to make the same marketable and of value, and which sums the parties of the first part are unable to obtain from any source, and are desirous of obtaining such sums and additional stock as may be necessary, from time to time, from the parties of the second part, to make the said material, now on hand, marketable and of value, and to enable them to run their mill, employ their hands and machinery, and prevent unnecessary waste;

That the parties of the second part have, from time to time, and since about June 1st, 1878, made to the parties of the first part large advances of money, for which, with charges for disbursements, interest and commission, the said parties of the first part are now indebted to them, and during the same time, said parties of the first part have consigned to the parties of the second part large quantities of merchandise, which has not, as yet, been entirely disposed of and converted into money, by reason of which, the parties hereto have been unable to obtain an accounting between them;

That the parties hereto firmly believe that when such accounting shall be had between them, the said parties of the first part will be found to be indebted to the said parties of the second part—

Now, therefore, for the purpose of securing the parties of the second part for the amount of indebtedness to them, from the parties of the first part, when such accounting shall be had, and as security against any loss or damage to the parties of the second part, on account of their promises and agree-

ments contained herein, and hereinafter set forth, and of one dollar to the said parties of the first part in hand paid by the parties of the second part, the receipt whereof is hereby acknowledged, the said parties of the first part do hereby sell, assign, transfer, and set over unto the said parties of the second part all the goods, wares, and merchandise, whether manufactured or unmanufactured, or in process of manufacture, and all their other property and effects, whether the same be contained in the said carpet works of the said parties of the first part, or at any other place or places, for the purposes aforesaid.

And the said parties of the second part hereby promise and agree to furnish the necessary material to the parties of the first part as shall enable them to complete and finish the goods now on hand, in process of manufacture, and will furnish other goods and material to be manufactured, in such manner as they shall designate; and will, after selling and realizing on the merchandise to be finished and manufactured as aforesaid, either by private or public sale, as the parties of the second part shall elect, and after deducting all their outlays and their charges for interest and commission, pay over all excess, if any there shall be, unto the said parties of the first part, as full and entire compensation for their work, labor, and services.

And it is hereby understood that the said parties of the first part will faithfully execute such orders for the parties of the second part as shall be given them by said parties of the second part, out of the material to be furnished as aforesaid, and will, as soon as goods are finished, deliver them, without delay, to the parties of the second part, or such other person as the parties of the second part shall direct.

And it is understood and agreed that this agreement can be terminated at the pleasure of the said parties of the second part, and they may, at any time, remove from the works at New Brunswick, any and all merchandise and other property referred to in this agreement.

In witness whereof, the parties hereto have hereunto set their hands and seals, the day and year first above written.

JAMES WADE & CO.          [L. S.]

WILMERDING, HOGUET & CO.   [L. S.]

In presence of—

SIMON H. STERN.

T. B. ARCHER.

At the close of the testimony, the court directed a verdict for the defendant, holding that this agreement was a mortgage to secure advances, and void as against the landlord and his bailiff, because it was not recorded, as required by the statute. That if it was not construed as a mortgage, then it was void, because it was a scheme to hinder, delay, and defraud the landlord in the recovery of his rent.

Whether, regarding this instrument as an absolute bill of sale, it was a legal fraud, designed to hinder and delay creditors, or whether it was a sham and fraudulent scheme, was a question of fact which should have been submitted, with proper instructions, to the jury.

The only question, therefore, to be considered on this rule to show cause, is whether the agreement is to be treated as a mortgage.

Whenever a transaction of this character resolves itself into a security for a debt, it is a mortgage. 2 *Story's Eq. Jur.*, §§ 1018, 1019. The right of redemption must exist, to constitute a mortgage, so that the debtor shall be entitled to a release of his property, on the payment of the debt. The form of the conveyance is not a controlling circumstance, where the right to redemption is established. In this agreement, the right to redeem upon payment of a sum due to the plaintiff, is absent. It was a continuing agreement, by which materials were to be furnished by the plaintiffs, to be manufactured by Wade & Co., for the plaintiffs, so long as the plaintiffs elected to continue the arrangement. The goods were to be delivered to the plaintiffs, who were to sell them, and, after deducting all their

outlays and commission, to pay over the excess, if any, to Wade & Co., in full compensation for their work, labor, and services.

By the express terms of the bargain, the plaintiffs could successfully have resisted any attempt of Wade & Co. to take the goods out of their hands, by a tender of the sum found due to them, upon an accounting. It may have been of great advantage to the business of the plaintiffs to have goods manufactured and delivered to them, upon the terms here specified, and of that advantage they could not be deprived, until they assented to terminate the contract. If this paper is treated as a mortgage, the plaintiffs will be deprived of a material benefit for which they stipulated. It seems clear that if Wade & Co. had refused to execute the orders of the plaintiffs, an action could have been maintained against them, even though they offered to pay the plaintiffs any sum found due them. These features in the instrument are inconsistent with the idea of a mortgage.

I think the rule to show cause should be made absolute.